STATE *against* CATO JENKINS.

State
v
Jenkins.

THE indictment charged the defendant, that at *Rutland*, &c. on the evening of the 1st day of *January*, 1803, with force and arms, he feloniously took, stole, and carried away one portmanteau, value 5 dollars, containing one 100 dollar bill of the *United States* Branch Bank in *Boston*, one bill of 50 dollars of the *Boston* Union Bank, one 20 dollar of the same bank, and three 10 dollar bills of banks unknown to the Jurors; of the proper goods and chattels of one *Oliver Whitney*, then and there being found, *contra formam statuti.*

The prisoner arraigned pleaded not guilty, and trial by the Jury.

The facts which appeared in evidence were, that *Whitney*, the owner of the goods, had fastened his horse with the portmanteau upon the saddle, which contained a small jug of *West-India* rum, and, as *Whitney* testified, the bills described in the indictment; went into a tavern; passed a convivial evening; at a late hour he found his horse had slipped his bridle, was wandering in the public highway, and the portmanteau with its contents were missing. The next morning the defendant treated one *Washburn* with rum from the jug, which he had concealed in a barn. This led to a suspicion that the defendant stole the property. On being charged, he readily acknowledged that he had the portmanteau in his possession, which he had concealed in a hay-mow. He said he found it early the same morning in the road, but denied all knowledge of the bank bills. Some ill-advised persons then seized the negro, and

The confession of a person on trial for a crime must be submitted to and weighed by the Jury: if extorted by personal suffering, it ought not to weigh in the least; if produced by fear or flattery, the Jury must determine whether it is true or not; but if unsupported by corroborating circumstances, it cannot operate to convict.

State
v.
Jenkins.

undertook to extort a confession as to the bank-bills by torture, which was effected by suspending him by a halter round his neck from the limb of a tree, until he was nearly suffocated, and by other base and inhuman practices, too indecent to be mentioned. The negro, however, persisted in his first confession, and denied all knowledge of the bills.

The defence made was, that the inducements and motives to a confession ought to be taken into consideration. A confession, to operate against a prisoner on trial, ought to be voluntary, that if the confession is allowed to weigh in the determination of the Jury, the whole of such confession ought to be taken together; and when thus taken, the defendant's confession amounted to a mere *treasure-trove*, accompanied with some improprieties, but with no act which can constitute larceny; and as the minds of the humane were much agitated by this novel and abhorred procedure of attempting to extort a confession of crime by torturing the accused, the defendant's counsel urged it pathetically in his defence, endeavouring to connect it with his confession.

But the Court, after reprehending, in strong and pointed terms, the practice of torture as a means of discovering the truth, charged the Jury to inquire simply, whether the defendant was guilty or not guilty of the charges presented in the indictment. They observed, that the confessions of a person on trial must be submitted to and weighed by the Jury. If extorted by personal suffering, applied to the accused with a direct design, they certainly ought not to weigh any thing. If produced by fear or flattery, the Jury would judge whether the confession exhi-

bited the truth or not; and would observe whether a confession thus made was or was not supported by corroborating facts or circumstances; for a confession induced by fear or flattery, when unsupported by any other testimony, could never operate to convict.

That when goods are stolen, and the whole or part of them are found concealed on a person, this is *prima facie* evidence that the person stole them; and unless he can show that he came by them honestly, must conclude him guilty of theft. That when goods are lost, it is no excuse in the casual possessor, who conceals or converts them, that he *found them.* It is incumbent on the finder of lost property to advertise them under the provisions of the several acts " relating to pounds, estrays, and lost goods." If he neglects, and conceals or privately converts the property, he is justly chargeable with larceny.

That the *prisoner's confession* of his taking the portmanteau is corroborated beyond doubt by his producing it from a place of concealment, and was not made when under the operation of torture.

That, however we might feel as men at the relation of the wanton, cruel, and outrageous abuse done to the prisoner, we must not suffer the impulse of the moment, however honourable to our sensibility, to divert us, as Judges or Jurors, from the obligation of our official oaths.

The Jury returned their verdict guilty.

The defendant filed a motion in arrest of judgment. Vide *post*, p. 384.

Mr. Attorney, for the State.
*Cephas Smith*, Junior, for defendant.

State
v.
Jenkins.

When goods are stolen, and the whole or part of them are found concealed on a person, it is *prima facie* evidence that he stole them; and unless he can show that he came by them honestly, must conclude him guilty. When goods are lost, it is no excuse the finder, who conceals or converts them, " that he found them." It is his duty to advertise them. *Vermont* Stat. vol. 1. c. xlvii. No. 1. No. 3. p. 466. 478.