## COUNTY OF YORK, ON THE FIRST TUESDAY OF JULY, 1806, BY ADJOURNMENT FROM THE THIRD TUESDAY OF MAY PRECEDING, AT YORK.

———◆———

PRESENT:

Hon. THEOPHILUS PARSONS, Chief Justice.
Hon. SAMUEL SEWALL, } Justices.
Hon. GEORGE THATCHER, } Justices.

[Memorandum. — After the last March term, in *Suffolk*, the Hon. Francis Dana resigned the office of Chief Justice.

He was first appointed a justice of this Court in the year 1785, and succeeded to the office of Chief Justice, vacant by the death of the Hon. Nathaniel P. Sergeant, in the year 1792.

The remembrance of the *impartiality, dignity,* and *learning,* exhibited by him, will be long cherished by those who have been concerned in the business of this Court while he held a seat on the bench.

The Hon. Theophilus Parsons, having been appointed Chief Justice, took his seat on the bench the first day of this term.]

———◆———

## Commonwealth *versus* Samuel Boynton.

Uttering a bank bill with the name of a fictitious cashier countersigned thereto is not within the statute of March 6, 1801; [but, if uttered with an intent to deceive and defraud, is misdemeanor punishable at common law.]

7 *                                                                    77

COMMONWEALTH *vs.* BOYNTON.

THE defendant was indicted for uttering, and publishing as true, a certain false, forged, and counterfeit, bill or note, counterfeited to the likeness and similitude of a bill or note issued by order and direction of the President, Directors, and Company, of the *New Hampshire* Bank, (which bank then was and yet is established by, and under the authority of, the state of *New-Hampshire,*) signed by the president, and countersigned by the cashier thereof; which bill or note is in substance and of the purport and effect following, *viz.:* "Ten dollars, No. 129. The President, Directors, and Company, of the *New Hampshire* Bank promise to pay ten dollars [ * **78** ] at the Bank of the *United * States* in *Philadelphia,* to *John Pocoke,* or bearer, on demand. *Portsmouth,* the 12th day of May, 1801. *Oliver Peabody,* Prest. ——— *Peabody,* Cashr." ——— against the peace *and contrary to the form of the statute,* &c. (a)

At the last term of the Court, the following verdict was found, *viz.:* "The jury find the defendant guilty of uttering and publishing the paper set forth in the indictment, in manner and form, and with the intent, as therein alleged; but the jury further find that the name of *Peabody,* purporting to be the name of the cashier of the said bank, and countersigned to the said note, is not the name of any person who has been, at any time, cashier of the said bank."

*Bartlet,* for the defendant, moved in arrest of judgment, and assigned the following reasons: —

1st. Because the bill charged in the indictment is not in the similitude of any bill issued by order of the president, directors, and company, of any bank in this or any of the *United States,* nor is it purported to be countersigned by any cashier of any bank of this or any of the *United States.*

2d. Because, by the verdict, the defendant is not found guilty of uttering any such bill so countersigned, &c.

By statute March 6, 1801, "If any person shall utter or publish any bill or note to the similitude of any bill or note issued by order of the president, directors, and company, of any bank or banking incorporation, which now is, or hereafter may be, established by and under the authority of this commonwealth, or of any one of the *United States,* and signed by the president, and *countersigned by the cashier* thereof, with intent to defraud, &c., knowing the same, &c., shall be sentenced," &c.

The exception taken by *Bartlet* was, that this note was not *countersigned* by the cashier, or with the name of any person who was, or ever had been, cashier of the *New Hampshire* Bank. And he

(a) *Commonwealth* vs. *Hoxey,* 16 *Mass. Rep* 385.

cited *Gwillim's ed. of Bac. Abr.* title *Forgery, C. — Mary Mitchell's* case, *Fost. Rep.* 120. — *Rex* vs. *Jones, Doug.* 300. (1)

* *The Solicitor-General, Davis.* To forge a note with [ * **79** ] a fictitious name is equally forgery as if a· true and real name is forged. So, the forgery of a protection in the name of A B, as being a member of Parliament, who, in truth, at the time was not a member, is as much a crime as if he were. (2)

A forged bank note, although the word *"pounds"* is·omitted in the body of it, and there is no *water-mark* in the paper, is a counterfeit note for the payment of money. (3) The *Solicitor-General* said he relied on this last authority to show that a counterfeit need not be an exact counterpart, and that if made so nearly like a true note as to be likely to impose upon persons of common capacity and observation, it is enough. And he added that, if this crime is not brought by the verdict within the statute, yet that the defendant may well be sentenced as,for a fraud at common law. (4)

*Bartlet,* in reply, agreed that the verdict found sufficient matter, if the indictment had been at common law; but that the indictment being predicated on the statute, and the verdict not supporting it, nor finding specially such a fraud as the common law would animadvert upon, no sentence can be founded upon it.

By the statute of larcenies, (5) when it appears to the petit jury that the person accused is not guilty of the high crime charged in the indictment, but is guilty of so much thereof as shall substantially amount to a crime of a lower nature, they must find the indicted person guilty of such part, to authorize the Court to proceed to sentence. It is humbly conceived that there is no such finding in this verdict, and that the Court will not proceed to sentence the defendant thereon.

The opinion of the Court was delivered by

PARSONS, C. J. In considering penal· statutes not remedial, we are bound to construe them strictly. The legislature has not expressly extended to bank notes the peculiar safeguard resulting from the penalties of this statute, unless the forged * note purport to be countersigned by a cashier of the [ * **80** ] bank whose note is counterfeited. As bank notes are generally, and I believe always, countersigned by a cashier, it might be presumed that no man of common prudence could be imposed upon by a fictitious bank note not purporting to be countersigned

---

(1) See *Clinch's* case, *Leach*, 611.  (3) *Rex* vs. *Elliot, Leach*, 210.
(2) *Bac. Abr.* tit. *Forgery*, A.  (4) 3 *Bac. Abr.* tit. *Indictment*, H.
(5) *March* 15, 1785. This statute has been repealed by the statute of March 11, 1806; the provision of which relating to this matter, the chief justice observed, was nere'y in affirmance of the common law.

by a cashier of the bank by whicn the note was supposed to be issued. If he should be, a punishment as for a fraud at common law would be a sufficient penalty. But when the forgery was completed by counterfeiting not only the name of the president, but the countersign of a cashier of the bank, common prudence might not be able to guard against this fraud. Therefore, the more effectually to prevent it, the penalties of the statute are applied.

As the jury have expressly found that this bill was not counter-signed with the name of any person who was cashier of the bank, the crime is not within the statute. But this is no cause for arresting the judgment. This is undoubtedly a fraud at common law, and the Court is bound to animadvert upon it. The paper was in the form of a good note, and fraudulently passed as such, with intent to injure and deceive. We shall consider of the sen‑tence. (*a*)

*Judgment not arrested*

(*a*) *Russell on Crimes*, 2d ed. *Lond*. p. 285.