FRANKLIN,
January,
1839.

STATE v. PALLAS PHEELPS.

If an indictment charge that, which is an offence at common law only, to be *contrary to the statute*, judgment will not be arrested.

The person, whose name is *forged*, is a competent witness in behalf of the state, on a prosecution for the forgery.

Confessions or disclosures, made under any threat, promise or *encouragement* of any hope of favor, are inadmissible in criminal prosecutions.

THIS was an information, in five counts, for the forgery of a written instrument in the following words, to wit:
" No.          St. Albans, February 18, 1836.
" Cashier of the Bank of St. Albans, pay James Wilson,
" or bearer, seven hundred dollars.
     " $700                    " N. W. KINGMAN."

The first count described the said instrument as " an or-
" der for the payment of money;" the second count describ-
ed it as " a request in writing for the payment of money" the
third, as " a certain order for the payment of money, com-
" monly called a bank check :"—the fourth as " a request for
" the payment of money, commonly called a bank check."
In the four first counts the instrument was set up *in haec ver-
ba.* The fifth count described it as " an order for the pay-
" ment of money, purporting to bear date the 18th day of
" February, A. D. 1836, and to have been signed by one N.
" W. Kingman, directed to the Cashier of the Bank of St.
" Albans, therein requesting the Cashier aforesaid to pay to
" James Wilson or bearer seven hundred dollars," and then
set it up *in haec verba.* In all the counts the intent was
alleged to be to defraud the President, Directors and Com-
pany of the Bank of St. Albans," and they all concluded
" contrary to the form, force and effect of the statute in such
" case made and provided and against, &c."

On the trial in the County Court,

Among other witnesses called by the prosecutor, for the
purpose of proving said check (which was produced in evi-
dence) to be a forgery, was N. W. Kingman, whose name
appeared thereon as the drawer. It did not appear that he
had been discharged from any liability on said check or that
the bank claimed that he was liable thereon, and it did ap-
pear that he had never paid the same. He was objected to
in behalf of the respondent, as an interested and incompe-
tent witness. The objection was overruled, and said wit-

ness gave material testimony in support of the prosecution, and tending to prove said check a forgery.

The prosecutor then called Abel Houghton, who for several years past had been a stockholder in the bank of St. Albans, and cashier of said bank, to prove confessions of the respondent, made to the witness.

It was objected in behalf of the respondent, that if any confessions had been made to the witness, they were induced by promises or expectations of favor, and were therefore not admissible in evidence. And, in support of said objection, the respondent's counsel proceeded to examine said Houghton, who testified that, in the summer or autumn of 1839, (the respondent being then at large on bail) the witness was informed by Judge Turner, one of the respondent's counsel, that the respondent was disposed to assist the bank in obtaining security for the amount of said check ; that the witness thereupon expressed a wish to see the respondent on the subject ;—that shortly after this the respondent called on the witness and said he thought he could assist the bank in obtaining such security, and added, that if he succeeded in getting the debt secured, he thought he should be entitled to favor in this prosecution. That the witness replied that all he wanted was security for the debt, and if that object was effected, the respondent might expect any favor, which the witness or the bank could properly grant; that the witness did not require or expect that the respondent was to make any confessions or admissions against himself, nor was any other or further encouragement of favor held out to him ; yet he believed that the respondent held his conversation with him in expectation of favor ; that several conversations passed between them, all of which were mutually considered as confidential and which the witness did not now feel at liberty to disclose, unless by direction of the court,—and that no security was ever produced. Upon this evidence the court overruled the objection—and the witness testified to several statements and declarations of the respondent, tending to implicate him in said forgery, part of which appeared to be in some measure connected with the proposed measures for getting security and the other parts not necessarily or apparently so connected.

To which decisions of the court the respondent excepted.

After verdict of guilty, a motion in arrest was filed, for the insufficiency of the information; which motion was overruled by the court, to which the respondent excepted. The exceptions were allowed and sentence respited and the case. passed to this court for revision.

H. R. Beardsley, for respondent.

I. The court below improperly admitted the witness, Kingman, to prove the forgery. 2 Russell on crimes, 374–5 *Rex* v. *Boston* 4 East's Rep. 582., 1 Phil. Ev. 93–4, *ib.* 171–2 Leach, 214.

The same rule has been adopted in some of the United States. 4 Johns. Rep. 276. Swift's Ev. 70.

II. The admission of Houghton to testify to the confessions of the respondent was manifestly improper and in violation of a plain and uniform rule of evidence on this subject.

The confessions were made upon giving the respondent to understand that he might expect the favor and assistance of the bank in the prosecution.

Courts have always rigidly adhered to the rule that confessions, made upon any inducement held out in prospect of favor or benefit of any sort, shall not be disclosed. 2 Russell on crimes 643–4. *Rex* v. *Kingston*, 4 Car. & Payne, 387, *Rex* v. *Hills*, 25 Com. Law Rep. 324. 1 Phillips' Ev. 86–87 & note.

III. In two prominent particulars it is insisted that the information is wholly insufficient.

1st. The offence, alleged in the information, is not an offence, provided for or within the meaning of the statute on which said information is founded.

It is insisted that a corporation is not a person within the meaning of the statute and, if not, the information charges no crime against the respondent.

This, being a highly penal statute, is not to be extended by implication.

In accordance with this rule it was decided that the statute 1 Ed. 6, which enacted a punishment against those who were convicted of stealing *horses*, did not extend to him who should steal *one horse*. So the statute 14 Geo. 2, which made it penal to steal *sheep or other cattle*, was held to extend only to sheep.

The principle is well settled that a penal statute should not be extended to cases not plainly intended to be embraced by the Legislature, although they come within the mischief intended to be remedied. 4 Term Rep. 665. See also *State* v. *Bowman*, 6 Vt. Rep. 594. *State* v. *McLeran* 1 Aik. Rep. 311.

Again, it has been decided by the English courts, that the statute 2 Geo. 2, Ch. 25, which was the same as ours in this particular, did not extend to corporations, and in the 31 Geo. 2, a statute was made expressly embracing bodies *politic and corporate.* - See statutes in Crown Circuit Companion, p. 397. 2 East's Cr. Law, 926, 2 Chitty's Cr. Law, 803. 2 Russell on Crimes, 368.

2. It does not appear by the information that the President Directors and Company of the Bank of St. Albans are or ever were a corporation, that they ever were chartered or created by any competent authority or that they ever had any legal existence. Surely this is necessary.

*J. J. Beardsley*, States Attorney, for prosecution.

I. Although by the English law, the witness, Kingman, would be excluded, yet the reason of the rule ceases to apply under the laws of this State, in consequence of those modifications which the common law has received by the intervention of statutory enactments, altering not only the common law itself but the mode and manner of prosecution in criminal offences. For similar causes the English rule has been exploded in several of the sister states, and doubts have been entertained whether there is any reason in the rule, as applied even to the English law. 2 Swift's Digest, 409. 3 Mass. Rep. 82. 5 do. 261—1 Root's Rep. 508—4 Johns. Rep. 296—1 Dall. Rep. 110—2 do. 239—Add. Rep. 246.

II. The evidence of the respondent's confessions was properly admitted. This case is fairly distinguishable from all those cases where confessions have been excluded in criminal prosecutions. Vid. 2 Starkie's Ev. 27, 28, 29, and notes and cases there cited.

The opinion of the court was delivered by

COLLAMER, J.—In an indictment for forgery, the person or persons, intended to be defrauded may be alleged in general words, as " *Drummond & Co.*" This has been holden sufficient as to natural persons, and " The President, Directors & Co.," is a good description of an artificial person.

FRANKLIN, January, 1839.

State v. Phelps.

Forgery, at common law, is the false making of any written instrument, for the purpose of fraud or deceit; and the offence is sufficiently alleged, when the forgery and the allegation of fraudulent intent fully appear, though no *person* is set forth as the one intended to be defrauded. This is a misdemeanor. Therefore, if a bank or corporation is a *person*, within the meaning of our statute, then this information sufficiently describes an offence against our statute. If a bank or a corporation is not a *person*, within our statute, then this information describes a common law misdemeanor. In such a case, neither a demurrer nor motion in arrest can be sustained. *State* v. *McLeran* 2 Aik. R. 311, *Commonwealth* v. *Boynton*, 2 Mass. R. 77.

In relation to the admission of Kingman, as a witness;—One, who is interested in the event of a suit, cannot be a witness; and one rule for settling that question is this; could the judgment in this case be given in evidence in another action, in relation to the same subject, in which the witness may be a party? However it may have formerly been holden, it is now fully settled that the judgment in a criminal prosecution can never be given in evidence in any civil proceeding. (4 Burr. Rep. 2251) Kingman had, therefore, no interest in the event of the prosecution, and, on general principles, was an admissible witness. In England it has always been holden, that a person, who would be bound by a paper, if genuine, cannot be admitted as a witness of its forgery. This has been attempted to be sustained on a variety of grounds, to us all unsatisfactory or inapplicable to our circumstances. In some cases, it is said that the paper is forfeited to the crown, with the other effects of the felon, on his conviction; and that the crown would never pursue the signer. We have no such forfeiture. Again it is said that the court impounds the paper and so its enforcement, afterwards, is much embarrassed or impracticable. This is unsatisfactory, and the English courts have long viewed the rejection of such witness as an anomaly in the law. *Rex*. v. *Boston*. (4 East 582.) Probably, this anomaly was long retained *in favorem vitæ*; as forgery was then a capital felony and its penalty seldom remitted. But now, in England, by statute, (9 Geo. 4, ch. 32.) such witness is admissible. Here, forgery is not capital and there is no reason for preserving this anomaly. It

has been discarded in New Hampshire, Massachusetts, New York and Pennsylvania, and we cannot recognize it as law.

After all the experience which has been had in criminal jurisprudence, it undoubtedly becomes courts to be cautious in admitting the confessions and admissions of the accused. Even in our own State, the Bourns were convicted of murder, on full confession, when no one had been killed. "A confession must never be received in evidence, where the defendant has been influenced by *any* threat or promise."—"The law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner and therefore excludes the declaration, if *any* degree of influence is used." (2 *Stark. Ev.* 49.) In relation to the admissions of Phelps, in this case, we have had some difficulty. On the one side it appears that the interview with Houghton was of Phelps' seeking; that no admissions were sought or expected by Houghton, and no direct assurances of favor were given to procure them. On the other hand "upon the trial of Hall for burglary, proof was offered that the prisoner had desired *Last* to apply to the Justice to admit him as a witness for the crown; but the evidence of such request was rejected, on the ground that it had been made under the hope of being admitted King's evidence and could not be considered voluntary." (2 *Stark. Ev.* 49) That case goes the whole length of holding that whenever he entertains a hope of advantage, though such hope is of his own creating, his confessions are inadmissible. We do not consider it necessary to go that length. But, in this case, the prisoner proposed to assist the bank in procuring security for the debt, and expressed *the expectation of favor in this prosecution,* if he did so. In this he was encouraged by Houghton, who said that he and the bank would give all the favor they properly could. He then proceeded to make the statements. Did he not then act under the expectation of favor and was not this expectation countenanced by Houghton? We think it safest to err on the side of humanity and exclude such confessions.

New trial granted.