## THE STATE *v.* DUE.

On a charge of larceny, the production of property by a prisoner, made in consequence of inducements held out to confess, will not be competent evidence against him, unless the property be identified by other evidence as that which has been stolen.

A prisoner was charged with stealing two one hundred dollar bills and a wallet. On inducements held out to him to confess, he produced a hundred dollar bill, saying to the complainant " this is yours," or, as another witness understood him, " this is one of the bills which I took with the wallet." *Held,* that the evidence was incompetent, unless the bill should be identified by other evidence as one of those which had been stolen.

*Quœre,* would what the prisoner said have been competent, provided the bill had been identified by other evidence as one of those which had been stolen ?

INDICTMENT, for stealing a wallet and two one hundred dollar bills, the property of Willard S. Carkin.

On the trial Carkin testified that on a certain occasion he took out his wallet, which then contained two one hundred dollar bills, and paid a little change to the prisoner, but on his way home missed the wallet and money. That the prisoner afterwards made a confession to him, and at the same time produced a hundred dollar bill, saying (according to this witness) " this is yours," and (according to another winess) " this is one of the bills which I took with the wallet."

It appeared, upon cross-examination, that the confession had been obtained by promises of favor, and for this cause all evidence of what was said and done by the prisoner at the time was objected to.

The court instructed the jury that the production of a hundred dollar bill, and the accompanying declaration tending to identify it as one of the bills in question, might be considered by them, but that no part of the confession beyond those facts was admissible against the prisoner.

A verdict of guilty being returned against the prisoner, his counsel moved that the same might be set aside and a new trial granted, for alleged error in the admission of said

evidence. And the questions arising upon the motion were transferred to this court for determination.

*Peabody*, for the respondent.

The prisoner's confession being inadmissible from the improper means used to obtain it, no part of that confession, not even that part which was explanatory of the act of delivering up the hundred dollar bill, should have been received.

*Jones' Case*, Ros. Crim. Ev. 39, was this: " So when the prosecutor, on the prisoner who had stolen his money being apprehended, said, ' he only wanted his money, and if the prisoner gave him that, he might go to the devil if he pleased,' upon which the prisoner pulled some money out of his pocket, and said it was all he had left of it, it was held by a majority of the judges that this evidence was inadmissible."

Also to the same point is *Rex* v. *Clark*, cited in 1 Harr. Dig. 844.

The case finds no evidence of the identity of the hundred dollar bill with the money stolen; and until such evidence is offered, the language of the prisoner, on delivering up the money, cannot be received. 2 East's Crown Law 657.

In 1 Phill. Ev. 116, the author says: " And that part also of the prisoner's confession, in which he has described a particular spot as the place where the goods were concealed or deposited, would be inadmissible unless confirmed afterwards by the proof of finding them there."

So in 1 Chitty's Crim. Law 572, the author says: " But any facts disclosed by an extorted confession, and afterwards ascertained to be true, may be given in evidence, though they were obtained by means which render the confession itself inadmissible, because they rest upon their own foundation. And so also in Ros. Crim. Ev. 51, the author quotes as follows: " A fact," it is said by the court, in Marickshall's case, 1 Leach 264, " if it existed at all, must exist

The State *v.* Due.

invariably in the same manner, whether the confession from which it is derived, be in other respects true or false.　Facts thus obtained, however, must be fully and satisfactorily proved, without calling in the aid of any part of the confession from which they have been derived."　See also Lord Eldon's opinion immediately following.　Ros. Crim. Ev. 51.

In *Jenkins' Case*, Ros. Crim. Ev. 51, the confession was excluded because, being made under a promise, it could not be relied upon; and the acts of the prisoner, under the same influence, and not being confirmed by the finding of the property, were open to the same objection.

In *Griffin's Case*, Ros. Crim. Ev. 52, the judge instructed the jury that notwithstanding the previous inducement to confess, they might receive the prisoner's description of the note accompanying the act of delivering it up as evidence that it was the stolen note.　But in this case two of the nine judges were of a contrary opinion; and Mr. Roscoe, in reference to the case says : " Declarations accompanying an act done, that act being corroborated by a fact, have in *one* case been admitted as evidence," his language clearly indicating the opinion that the great mass of decisions were the other way.

And in *Jones' Case*, Ros. Crim. Ev. 52, on the next page following *Griffin's Case*, the ruling is diametrically opposed to it, and in accordance with all the other decisions.

In fine, we do not see why the reason of the rule which excludes confessions extorted through fear or hope, should not equally apply to that part of the confession explanatory of an act, as in this case the delivering up of the hundred dollar bill.

The influence of hope or fear might as well tempt the prisoner to deliver up money of his own, declaring it to be the prosecutor's, as lead him to make a false confession in any other particular.

*Ayer*, solicitor of Hillsborough, for the State.

The State *v.* Due.

If, in consequence of an extorted confession, made by threats or promises of favor, certain facts are made known tending to establish the guilt of the prisoner, evidence of these facts may be received. Ros. Crim. Ev. 50, 51.

Where a person, indicted as a receiver of stolen goods, in consequence of promises of favor, made a full confession, and, according to that confession, the property was found at her lodgings, concealed among the sackings of her bed, evidence of the finding was held admissible. *Warrickshall's Case,* 1 Leach 263.

A prisoner made a statement under promises of favor, which disclosed where a stolen lantern would be found. The judges were of opinion that the words used by the prisoner, with reference to the lantern, ought to be given in evidence, and the witness accordingly stated that the prisoner told him that he had thrown the lantern into a certain pond. The other parts of the statement were not received. *Gould's Case,* 9 C. & P. 364.

This decision is fully sustained by *Griffin's Case,* Russ. & Ry. 151; Ros. Crim. Ev. 51. There the prisoner was tried for stealing a guinea and two promissory notes. The witness was permitted to state that the prisoner brought to him a guinea and a five pound Reading Bank note, which which he gave up to the prosecutor as the guinea and one of the notes which had been stolen from him.

EASTMAN, J. It may be laid down as a general rule that free, deliberate, and voluntary confessions of guilt are among the most effectual proofs known to the law. It is also equally well settled that verbal confessions are to be received with great caution; and that all confessions which are obtained by the influence of hope or fear should be rejected. 4 Hawk. P. C. 425; 1 Leach's Crim. Cases 299; 1 Leach's Crim. Cases 827; 1 Leach's Crim. Cases 328; 2 Leach 636, note in *Lambe's Case ;* 2 East, P. C. 568; *State* v. *Phelps,* 11 Vt. Rep. 116; 1 Greenl. on Ev. §§ 215, 219; 1 Phill. on

Ev. 111; *Commonwealth* v. *Knapp*, 10 Pick. 489; *Commonwealth* v. *Harman*, 4 Barr. 264; *State* v. *Guild*, 5 Halstead 184, 185; *Commonwealth* v. *Chabbock*, 1 Mass. Rep. 144. Various examples illustrating these principles are to be found in 1 Greenl. on Ev. § 220.

But notwithstanding the general principle excluding confessions obtained by improper influences, yet it is held by most tribunals that it is competent to show that the property stolen, or the instrument of the crime, has been discovered in consequence of information communicated by the prisoner, although the confessions made at the time be not receivable. 1 Leach's Crim. Cases 298; 2 East's. P C. 657; *Commonwealth* v. *Knapp*, 9 Pick. 496.

Such evidence is held admissible upon the ground that it consists of facts that can be separated from the confession, and which exist independent of it. But it is to be observed that the general principle is to some extent broken in upon by the reception of such evidence, since the facts are drawn from the prisoner by the inducements held out to confess. It is also to be observed that the rule by which it is held that the fact of the discovery of stolen property in consequence of the confession may be received in evidence, makes it essential to the competency of the evidence that the goods shall be identified by other testimony as the goods which were stolen. 1 Leach 264; 2 East's P. C. 658; Ros. Crim. Ev. 47; 4 Hawk. 425.

Tried by these principles, the evidence received in this case was incompetent. What the prisoner said and did was induced by promises of favor. In order to make the evidence competent, even under the broadest rule, it should have been shown by other testimony that the bill produced was the one which Carkin had lost; that it was the property stolen. This was not done, and all that we have to rely upon, independent of the prisoner's statement, is the production of a bill of a like denomination with the one alleged to be stolen; and the case seems to come clearly within the

The State *v.* Due.

rule laid down by Lord Eldon, who said, that where the knowledge of any fact was obtained from a prisoner, under such a promise as excluded the confession itself from being given in evidence, he should direct an acquittal, unless the fact itself proved would have been sufficient to warrant a conviction, without any confession leading to it. *Harvey's Case,* 2 East's P. C. 658; *Lockhart's Case,* 1 Leach's Crim. Cases 430; 2 East's P. C. 657.

Influenced by hope or fear, a prisoner might deliver up money of his own, equal in amount and upon the same bank, and bills of the same denomination with those stolen, in order to relieve himself from arrest, or with the hope that he might gain favor, or upon threats made; and if the property produced is not identified with that stolen, it can have no tendency to sustain the charge. And if a fact itself is incompetent, much more so would be a confession made at the same time.

Perhaps the production of a bill of the same denomination may have some tendency to show it to be the property stolen, still, we think, it is too slight to allow it to break in upon the rule, that the property must be identified by evidence other than that of the confession, so as to make it a fact, independent of the confession.

As this bill was not identified as the one stolen, the confession in regard to it must stand unsupported by the fact of its production. It was, therefore, a naked confession, obtained by improper influences, and, of course, inadmissible.

And this, we think, is the doctrine of most, if not all, of the leading cases, when carefully examined. The fact which is ascertained by means of a confession, induced by improper influences, must exist and be competent evidence of itself, independent of the confession. As was said in *Warrickshall's Case,* " facts thus obtained must be fully and satisfactorily proved without calling in the aid of any part

The State *v.* Due.

of the confession from which they have been derived." 1 Leach's Crim. Cases 264.

*Griffin's Case*, Russ & Ry. 151, cited by the counsel for the State, appears to be an authority in point for the admission of the evidence. From the report of the case which we have before us, it appears that the prisoner was charged with stealing a guinea and two promissory notes, and the prosecutor was permitted to prove " that the prisoner brought to him a guinea and a five pound Reading Bank note, which he gave up to the prosecutor as the guinea and one of the notes that had been stolen from him." The note thus produced, the prosecutor could not identify, otherwise than by its corresponding with the stolen note in the sum for which it was given and in being a note of the same bank. The decision was made upon a divided Bench, two of the judges holding that the production of the money alone was admissible, and not that the prisoner said " that it was one of the notes stolen from the prosecutor." And so far as our researches have gone, Griffin's case goes farther than any other English decision. But even in that case the note produced had more evidence of identity with the one stolen than in the case before us. In Griffin's case it was a note of the same bank, as well as of the same denomination, while in this, it is only of the same denomination. Moreover, Griffin's case is directly contradicted by the case of *Jones*. Russ & Ry. 152. And, upon the whole, we entertain no doubt that the identity of the property produced should be made to appear by evidence independent of what is said or done by the prisoner.

But supposing that this bill had been identified, by independent evidence, as the one lost by Carkin, ought the declaration of the prisoner, accompanying the production of the bill, to have been received. The case finds that the confession had been obtained by promises of favor, and it is clear, as we have seen, that disconnected from the act of producing the bill, the confession would be inadmissible.

But ought the confession, when coupled with the act of delivering the property, to be admitted; assuming that the property produced was that which was charged to have been stolen?

The more modern books would seem to show the evidence to be competent, provided the property be otherwise identified. Mr. Greenleaf remarks, that if the prisoner himself produces the goods stolen, and delivers them up to the prosecutor, notwithstanding it may appear that this was done upon inducements to confess, held out by the latter, there seems no reason to reject the declarations of the prisoner, contemporaneous with the act of delivery and explanatory of its character and design, though they may amount to a confession of guilt. He adds, however, that whatsoever he may have said at the same time not qualifying or explaining the act of delivery, is to be rejected. 1 Greenl. on Ev. § 232. And the following authorities are more or less to the same effect. *Stage's Case,* 5 City Hall Recorder, 117; *Tucker's Case,* 5 City Hall Recorder, 164, 166; *State* v. *Moore,* 1 Hayward's (N. C.) Rep. 482; *State* v. *Jenkins,* 2 Tyler, 377; *Hudson* v. *The State,* 9 Yerger, 408. We may add, also, *Griffin's Case,* above cited, which appears to be the foundation of most of the other authorities.

On the other hand, the older books, as well as many modern cases, hold the evidence of the confession to be inadmissible. East says, the most that is proper to be left to the jury is the fact of the witness being directed by the prisoner where to find the goods, and his having found them accordingly, but not the acknowledgement of the prisoner of having stolen them or put them there. 2 East's P. C. 658. Of the same purport are the following authorities. 2 Hawkins 425; *Grant's Case,* 2 East P. C. 658; Lord Eldon in *Harvey's Case,* 2 East 658; Roscoe 47; *State* v. *Aaron,* 1 Southard's (N. J.) Rep. 235; *Jackson's Case,* 1 City Hall Recorder 287; *Milligan & Wolchman's Case,* 6 City H. Rec. 69; *State* v. *Roberts,* 1 Dev. 259; *Scaggs* v. *The*

*State*, 8 Smede & Mar. 722. In the case of *Rex* v. *Jones*, Russ & Ry. 152, to which we above alluded as being opposed to the authority of Griffin's case, it was held that the statement of the prisoner, on producing some money out of his pocket, " that it was all he had left of it," was inadmissible.

The remarks of the court in *State* v. *Fields*, Peck 140, appears to us to contain much good sense, and to be applicable to all confessions not deliberately and voluntarily made. The evidence of such confessions is liable to a thousand abuses. They are made by persons generally under arrest, in great agitation and distress, when each ray of hope is equally caught at; and frequently under the delusion, though not expressed, that the merit of a disclosure will be productive of personal safety. The confession is made in want of advisers, under circumstances of desertion by the world, in chains and degradation, with spirits sunk, fear predominant, hope fluttering around, purpose and views momentarily changing, a thousand plans alternating, a soul tortured with anguish, and difficulties gathering into a multitude. How easy it is for the hearer to take one word for another, or to take a word in a sense not intended by the speaker. And for the want of an exact representation of the tone of voice, emphasis, countenance, eye, manner and action of the one who made the confession, how almost impossible is it to make third persons understand the exact state of his mind and meaning."

These suggestions are particularly correct when applied to a sensitive and naturally timid mind; for it is undoubtedly true, that an individual constitutionally timid and nervous, although entirely innocent of the charge, would display more signs of guilt upon being suddenly arrested, than he would whose nerves are firm and whose conscience has been seared, although fully guilty of the alleged crime.

And so with the remarks in Leach's Hawk., cited and approved in *State* v. *Aaron*, 1 Southard 239. " As the human

The State *v.* Due.

mind, under the pressure of calamity, is easily seduced, and liable, in the alarm of danger, to acknowledge indiscriminately a falsehood or a truth, as different agitations may prevail, a confession, whether made upon an official examination or in discourse with private persons, which is obtained from the defendant, either by the flattery of hope or by the impressions of fear, however slightly the emotions may be implanted, is not admissible evidence; for the law will not suffer a prisoner to be made the deluded instrument of his own conviction."

As showing the extreme liability of a prisoner's being misunderstood under such circumstances, take the evidence in the present case. Which of the witnesses was correct? One testified that the prisoner, on producing a hundred dollar bill, said, " this is yours;" another, who was present at the same time, testified that he said, " this is one of the bills I took with the wallet." The latter is evidently very much stronger than the former. The statement, " this is yours," might be perfectly consistent with his having innocently found the money, while the latter statement implies, if not actually confesses, a theft—a taking of the wallet. And yet, the wallet even, being an article that is kept about the person, could not easily have been stolen with premeditation. The taking of it, if done at all, may very possibly have been from a place where the prosecutor accidentally left it; perhaps where he paid the money to the prisoner. But we call attention to this matter particularly, as showing the truth of the suggestion in *State* v. *Fields*, where it is said, " how easy is it for the hearer to take one word for another, or to take a word in a sense not intended by the speaker."

Notwithstanding the production of the property, by which the confession may gain some credence, the prisoner makes the statements in consequence of the influences that are brought to bear upon him. It is his hopes or fears which have been excited, that bring out the confession; and it ap--

pears to us that it is worthy of much consideration whether a rule which long experience has shown to be the only safe and reliable one, to wit, that all confessions which are not free, deliberate and voluntary, are inadmissible, shall be broken in upon; whether anything which a prisoner may say on the production of stolen property shall be competent evidence against him, when his statements are drawn from him by improper influences.

The point, we are aware, as presented by some of the decisions where the evidence has been admitted, is a nice one, and not without its difficulties; but in criminal matters, is it not better that the prisoner should have the benefit of reasonable doubts in regard to the law as well as the facts?

We hold to punishing crime with certainty and efficiency; at the same time we regard it as essential to the sound and effectual administration of criminal law, that before a prisoner should be convicted there should be no reasonable doubt of his guilt left.

With these suggestions we waive the further consideration of the question at the present time.

The evidence being incompetent, according to the principles first laid down and discussed, the verdict must of course be set aside, and a new trial granted.